62  677
78  449
62  677
81  141

J. T. SULLIVAN & CO. v. W. D. CLEVELAND ET AL.

(Case No. 1770.)

1. ATTACHMENT — PREFERENCE LIEN.— Where creditors obtain writs of attachment against an insolvent firm before other creditors sue out their writs of attachment, and they then change their original purpose of attaching, and endeavor by other means to secure their debt, in such case, the second set of creditors obtain a preference lien over the creditors first obtaining their writs.

2. SAME — FACT CASE.— See the statement of the case, where proceedings on the part of first attaching creditors caused them to lose their preference lien.

3. SAME — ISSUES.— After the attached property has been sold, the main question to be decided being which one of the creditors is entitled to the moneys arising from the sale, and all the parties claiming the attached goods being before the court, the various issues between the attaching creditors may then be tried.

4. PRIORITY OF LANDLORD'S LIEN.— A claim for rent due by the insolvent firm operates as a lien superior to the attachment liens, and is entitled to be first satisfied out of the moneys arising from a sale of the attached property.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

On December 5, 1883, J. T. Sullivan & Co. sued out of the district court of Navarro county a writ of attachment against Hollinger & Sims, failing merchants of the town of Dawson, in Navarro county. On the same day, Sparks, Mallory & Allen sued out of the county court of McLennan county attachments against Hollinger & Sims. Sutherland & Montgomery also sued out attachment against them on the same day. On December 6, 1883, W. D. Cleveland, of Houston, and Miller & English, of Galveston, also sued out attachments against the failing merchants. On the evening of December 5, the day their writ of attachment issued, J. T. Sullivan & Co. procured R. H. Cubley, deputy under E. E. Dunn, sheriff of Navarro county, who, with their agent, was to go to Dawson to execute their writ by a levy on sufficient goods of Hollinger & Sims, with instructions to first see Hollinger & Sims, and if they would give him their note indorsed by J. M. Johnson, of Dawson, not to make any levy. When they arrived at Dawson it was night. On the morning of the 6th December, after ascertaining that Hollinger & Sims could not secure the claim of J. T. Sullivan & Co., procuring Johnson's indorsement, Lisman handed the writ of attachment to Cubley, the deputy sheriff, and told him to make the levy at 2 P. M. on December 6. Cubley proceeded to the storehouse of Hollinger & Sims, called the defendants Hollinger & Sims into their back room adjoining the storeroom, and read to them the writ of attachment, and then walked into the middle of the store, proclaimed his levy and indicated the goods on which he levied. The deputy sheriff levied Sparks, Mallory & Allen's writ, subject to the levy of J. T. Sullivan & Co., but did not take exclusive possession for them, and was instructed not to close doors or stop sales; goods continued to be sold as usual. Hollinger & Sims telegraphed to Lessing, Soloman & Co., of Waco: "Sullivan's man is here; can you help us?" They received a reply, "Send Sullivan's man here."

The deputy sheriff did not close the doors of the store, and Hol-

linger & Sims remained in the store selling goods until 9 o'clock that evening. About sunset that evening, Lisman, Sparks and Sims, one of the defendants in attachment, got on the train and went to Waco, with the intention of meeting Lessing, Solomon & Co. and ascertaining whether they would protect Hollinger & Sims against the attachments.

On the night of the 5th December, Cubley, the deputy sheriff, slept in the back room of the store, having taken control of the store, although he admitted that he did not take possession of the goods exclusively for Sullivan & Co. and Sparks, Montgomery & Allen. The keys of the front and side doors were in the possession of Hollinger, one of the partners.

Late on the evening of December 6th, Miller & English and W. D. Cleveland sued out their writs in Corsicana. Miller & English, represented by their agent, Lee Cotton, had the constable at Corsicana to accompany him to Dawson for the purpose of levying the writ. They arrived at Dawson about 4 o'clock on the morning of the 7th December, and found Deputy Sheriff Cubley sleeping in the back room of the store and in possession of the Hollinger & Sims stock of goods. Cubley told Cotton and Doolen, the constable, they were too late; that he had possession of the goods under levy made by him for Sullivan & Co. and Sparks, Mallory & Allen. Cotton then gave him the writ of Miller & English, and Calhoun, the agent of W. D. Cleveland, gave him his writ, which he levied subject to the prior levy of J. T. Sullivan & Co., and made his return on all the writs accordingly.

Hollinger & Sims failing to replevy, J. T. Sullivan & Co. procured an order directing the goods to be sold, and the funds arising from the sale were deposited with the district clerk to await final judgment in the attachment case, amounting to $2,263.15. Orders of sale were procured also on all the attachment cases. On the 8th May, 1884, W. D. Cleveland amended the petition in his attachment suit against Hollinger & Sims, alleging in addition to the averments in their original petition that the levies of J. T. Sullivan and Sparks, Mallory & Allen were of no effect, and making all the other attaching creditors, the sheriff and district clerk parties defendant in his suit, had them all served with process — citation — and prayed for injunction restraining the clerk from paying over the money to creditors according to the priority as shown by the sheriff's returns on the several writs of attachment.

Judgment was rendered in favor of J. T. Sullivan & Co. by default and their attachment foreclosed; also in all the other attachment

suits, including that of W. D. Cleveland v. Hollinger & Sims, before the judgment appealed from was rendered.

On 29th August, 1884, that part of the case of W. D. Cleveland v. Hollinger & Sims was called for trial. G. R. Sims having intervened, claiming an interest in the money held by the clerk, on account of a landlord's lien claimed by him for rent of the house in which Hollinger & Sims were doing business, J. T. Sullivan & Co. pleaded:

1. General demurrer.

2. Special demurrer. Because it appearing from the averments of W. D. Cleveland's amended pleadings that his attachment was levied subsequently to that of J. T. Sullivan & Co., he cannot set aside or quash defendants' levy for informality.

3. General denial.

4. Special answer setting up priority of levy, and alleging that if the levy was by any means vacated or avoided, such was negligence of the sheriff, and prayed for judgment over against E. E. Dunn, sheriff. All the parties filed answers. E. E. Dunn, sheriff, demurred to the plea of appellants seeking a judgment over against the sheriff in the event the court determined their levy was rendered invalid by negligence of Deputy Sheriff Cubley. The whole case was submitted to the court, The court rendered judgment, overruling the general and special demurrers of J. T. Sullivan & Co., and sustained the demurrer of Sheriff Dunn, to which J. T. Sullivan & Co. excepted. The court declared the levy of J. T. Sullivan & Co.'s attachment to be a nullity, also that of Sparks, Mallory & Allen, and gave priority to levies in the following order, and directed payment by the clerks:

1st. To G. R. Sims, the intervenor, for rent.

2d. Montgomery & Sutherland.

3d. Miller & English.

4th. W. D. Cleveland — consuming the entire fund.

*Frost, Barry & Lee*, for appellants, cited: Hulme v. Janes, 6 Tex., 242; Long v. Garnett, 45 Tex., 401; Boles v. Linthicum, 48 Tex., 223.

*Simkins, Simkins & Neblett*, for appellees, cited: Cook v. Sparks, 47 Tex., 33; Blum v. Schram, 58 Tex., 528; Eichoff v. Tidball, 61 Tex., 421.

WEST, ASSOCIATE JUSTICE.— Under all the facts disclosed by the testimony, when taken and considered together as a whole (and there is, in fact, no actual conflict of evidence, or very marked dis-

agreement, between the parties litigant, as to what those facts really were), it is believed that the district court committed no serious error in rendering the judgment finally entered in the case as to the rights of the contending creditors.

It appears quite clearly from the evidence that the appellants, for reasons which were satisfactory to themselves, and which are fully disclosed by the proof contained in the record, changed their original purpose (if such was ever in fact their purpose) of levying their writs of attachment on the goods of Hollinger & Sims, on the 5th day of December, 1883.

They chose and elected to postpone for the present active measures for enforcing their writs of attachment, as was found by the court (and the finding is fully justified by the evidence), until the appellees, by superior diligence and acting, gained a preference lien over those on the attached property.

This finding is, we believe, supported by the evidence adduced on the trial, and which is set out at length in the record, and as to which there is no serious disagreement between the parties. Meyer, Weis & Co. v. Oliver, 61 Tex., 585.

Nor do we believe that the district court was in error in trying these several issues between the attaching creditors as it did, under all the facts of this particular case, as disclosed by the record. Eichoff v. Tidball, 61 Tex., 421.

The property of the insolvent debtors had been already sold under the different writs of attachment by the sheriff. After this sale was made, the main question to be decided was as to who of the creditors and in what order were they entitled to the moneys arising from the sale of the attached property.

All the parties claiming an interest in this fund arising from the sale of the attached goods were before the court, and their rights were not prejudiced by the manner in which the issues between them on these matters were tried.

We are also further of the opinion that, under the facts disclosed by the evidence in this case, the district court did not err in permitting the landlord Sims to intervene in the cause, and set up, as against the fund then in the hands of the court, his claim for rent. The moneys had not yet been distributed, and his relation to the insolvent debtors as landlord, and the amount of his claim, do not appear to have been in dispute. The only question that seems to have been considered was his right to intervene in this proceeding, and assert, as against his insolvent debtors, his right, as landlord, to his unpaid rent. Eichoff v. Tidball, 61 Tex., 421.

This, under all the facts and circumstances of this case, as disclosed by the record, we are of the opinion he had the right to do; and the district court committed no error in so holding. The judgment is affirmed.

AFFIRMED.

[Opinion delivered December 19, 1884.]