BERKEY & GAY FURNITURE COMPANY V. SHERMAN HOTEL
COMPANY ET AL.

No. 6769.

1. **Equitable Lien on Chattels.**—It may be conceded that a contract although of an executory nature may be construed to be good in equity as a lien when it is evident that the parties intended that it should operate as such. In this case the sale was on credit with conditional agreement for a mortgage in future. This did not retain a lien.

2. **Landlord's Lien.**—A landlord is given by our statutes a "preference lien" upon the goods or effects of the lessee on the rented premises to secure the payment of the rents due or that may become due at any time before the determination of the lease or the expiration thereof according to the terms. Sayles' Civ. Stats., art. 3122a.

3. **Chattel Mortgages Unrecorded.**—Every chattel mortgage or lien on personal property, or reservation of any title or interest therein intended as a security for the payment of the purchase money or other debt, is, when the vendee or mortgagor is given or allowed to retain possession of the goods, void as to the lien creditors of such vendee or mortgagor, with or without actual notice, unless such lien, etc., is in writing duly proved or acknowledged and filed for record as prescribed by law. Sayles' Civ. Stats., arts. 3190a, 3190b.

4. **Landlord's Lien.**—A landlord while the lease continues and the rents have accrued or are in legal contemplation under the contract certain to accrue or are accruing in his favor, should be regarded as a *creditor*, not as a mere "mortgagee or lien holder" as the term has been construed within the purview of the Act of 1879 relating to chattel mortgages.

5. **Same—Statutory Lien.**—The landlord's lien attaches independent of and without judicial process. The law gives it. The levy of the process would add nothing to it. It is as strong without as with a seizure under some writ of the court. A distress warrant is but a mode of enforcing the lien but does not create it.

6. **Same.**—A landlord is a lien creditor within the meaning of the law, as much so as one who has obtained a lien to secure the payment of his debt by the levy of an execution or an attachment.

7. **Landlord's Lien Superior to Elder Unrecorded Chattel Mortgage.**—A landlord while the lease is existent is a *creditor* within the purview of our statutory provisions. An unrecorded chattel mortgage must be held by the force of these statutes ineffectual against the statutory lien given to the landlord.

APPEAL from Grayson. Tried below before Hon. H. O. Head. The opinion states the case.

*B. G. Bidwell* and *Hazlewood & Templeton*, for appellants.—1. The promise made by Stocking to make a mortgage on the goods to secure the unpaid purchase money is a valid and binding obligation as between the parties and their representatives as well as those who acquired a lien with notice. 1 Jones on Mort., secs. 163, 164; 1 Jones on Liens, secs. 557, 819; Whiting v. Eichelberger, 16 Iowa, 422; Rees v. Coats, 65 Ala., 265; Loyd v. Currin, 3 Hun, 462; Coachman v. Wright, 8 Neb., 1; Bank v. Jones, 4 N. Y., 497; Glover v. McGilorðy, 63 Ala., 508; Ceas v. Bramley, 18 Hun, 187; 75 N. Y., 251; 74 N. Y., 348; 22 N. Y., 386; 29 Am. Dec., 63, 431; 55 Am. Dec., 90; Bradwell v. Roberts, 66 Barb., 433; Ackley v. Finch, 7 Cow., 290.

2. When Stocking executed the mortgage in January, 1888, it reverted back and took effect from the date of the sale of the goods in June, 1887, and gives the furniture company preference over any rights acquired by the hotel company in the interim, it having notice, etc. 73 Am Dec., 431; 75 Id., 52; 74 N. Y., 348; 75 Id., 251.

3. The equitable lien of the Berkey & Gay Company created by the promise of Stocking to make a mortgage at a future day is not defeated by the failure of the furniture company to demand the mortgage at the time the goods were delivered. 1 Jones on Liens, sec. 810; Husted v. Ingraham, 75 N. Y., 251; 74 N. Y., 348.

4. The agreements of Stocking to give the furniture company a mortgage at a future day to secure the purchase money for the goods bought by Stocking from the company created an equitable lien on the property good as between the parties, creditors, and purchasers, mortgagees and other lien holders with notice. Rev. Stats., app. p. 15; Briscoe v. Bronaugh, 1 Texas, 326; Senter & Co. v. Lambeth, 59 Texas, 259; Blankenship v. Douglas, 26 Texas, 227; Grace v. Wade, 45 Texas, 532; 3 Pom. Eq., sec. 1235; 1 Jones on Mort., sec. 163; 7 Fed. Rep., 543; 1 Littell (Ky.), 113; 13 Bush, 430; 22 N. Y., 386.

5. The promise made by Stocking to the furniture company to execute a mortgage on the goods purchased of it, whether made orally or in writing, to secure unpaid purchase money, is valid and binding between the parties to said agreement and all others except such creditors as are contemplated by the chattel mortgage act of this State—"purchasers, mortgagees, and other lien holders in good faith."

6. The equitable lien fixed on the property by Stocking agreeing to execute a mortgage at a future day is not within our registration laws. Rev. Stats., app. p. 15; 1 Texas, 326; 59 Texas, 296; 26 Texas, 227; 45 Texas, 532; 3 Pom. Eq., sec. 1235; Mavre v. Simonds, 100 U. S., 145; 74 Am. Dec., 56; 73 Id., 431; The John T. Moore, 3 Woods, 61; Steamship Co. v. Conner, 3 Rich., 335; Hobbs v. The Interchange, 1 W. Va., 57, 73; 73 Am. Dec., 431; 22 N. Y., 386; 10 Bush, 338; 13 Bush, 430.

7. The oral promise made by Stocking to the Berkey & Gay Company to execute a mortgage on the specific goods purchased from it to

secure purchase money is a valid contract and created an equitable lien on said goods which will be enforced specifically in equity against Stocking and those claiming adversely to the furniture company. Rev. Stats., app. p. 15; Pom. Eq., sec. 1235, et seq.; 1 W. Va., 57; 22 N. Y., 386; 10 Bush, 338; 13 Bush, 430; 72 Mo., 179; 91 Am. Dec., 602; 4 Am. Rep., 687, a long note.

*Bryant & Dillard,* for appellees.— 1. The written agreement of Stocking to give a mortgage on the furniture to the amount of $5650, less the amount to be paid in cash, was void as to third persons. Sayles' Civ. Stats., arts. 3190a, 3190b; Lazarus v. Bank, 72 Texas, 254; Gay v. Hardeman, 31 Texas, 245; Newsom v. Beard, 45 Texas, 151; Jones on Chat. Mort., sec. 10; Price v. Cutts, 74 Am. Dec., 52.

2. The agreement of Stocking to give appellant a mortgage, in so far as it was oral, was not specifically enforceable even as between them, and as to third persons was void.

3. The agreement of Stocking to give appellant a mortgage, in so far as it was oral, was as to appellee in contravention of the laws of this State and void, for appellee occupied the position of both creditor and of lien holder in good faith. And the mortgage subsequently given could not relate back to such agreement so as to be validated, but was itself void as being given subsequent to the time that appellee's rights had accrued.

Appellee was a creditor and a lien holder for the rent of the whole term, and the levy of the distress warrant was not necessary to secure any of its rights. Key v. Brown, 67 Texas, 300; Brothers v. Mundell, 60 Texas, 240; Marsalis v. Pitman, 68 Texas, 624; Livingstone v. Wright, 68 Texas, 706; Bourcier v. Edmondson, 58 Texas, 678.

*W. W. Wilkins,* for appellees M. W. Fleming and W. W. Walker.— 1. A valid and superior lien for purchase money can not be created in this State in favor of the vendor of the property by a verbal agreement made at the time of the sale to give a mortgage on the property in the future, as against creditors having liens upon said property by operation of law with notice of such agreement.

2. No such lien can be created as against such creditors without notice of such agreement. Sayles' Civ. Stats., arts. 65r, 3122b, 3190a, 3190b; Gay v. Hardeman, 31 Texas, 245; Lazarus v. Bank, 72 Texas, 254; Jones on Chat. Mort., 55, 56.

MARR, JUDGE, *Section A.*—There is substantial accord in the respective statements of the case as made by the opposing counsel. On some date prior to April, 1887, the exact date not appearing in the record, H. W. Stocking made an agreement with the Sherman Hotel Company, a corporation under the laws of the State of Texas, by which

he was to lease from said hotel company the Binkley Hotel, situated in the city of Sherman, for the term of five years from the 1st of October, 1887, at an annual rental of $6000, payable monthly in advance. The hotel was then building, and no contract was reduced to writing. In September of that year the board of directors duly confirmed the contract theretofore verbally entered into between Stocking and the hotel company, and the ratification and agreement was entered upon its minutes. The last of September or first of October Stocking went into possession of the hotel and continued in it until the 17th of June, 1888, when the lease was abandoned and Stocking surrendered possession to the hotel company.

In April or June, 1887 (the court in one place says April and in another June), Stocking purchased from the Berkey & Gay Furniture Company furniture, carpets, and curtains for the hotel. At the time he made the purchase he agreed with the Berkey & Gay Furniture Company that they were to be paid $2500 in cash and were to have a chattel mortgage upon the goods to secure the balance of the purchase money. This agreement was made, as it appears, verbally, and at the time that he made the purchase he and the Berkey & Gay Company made out a list of part of the articles which are covered by the mortgage hereinafter referred to, and after making out a list of articles made this memorandum: "Terms not less than $2500 in cash, balance in six, twelve, and eighteen months. Notes for deferred payments to be secured by chattel mortgage. Property to be kept insured for the benefit of the Berkey & Gay Company. [Signed] H. W. Stocking." The aggregate amount of articles which was covered by this memorandum was $5000, and did not include any of the carpets or curtains. The carpets and curtains amounted to the sum of $3290 and were not included in the written memorandum nor in the list to which the same was appended; nor was there any agreement made concerning these, further than some verbal agreement never reduced to writing, and in which no goods were specified. The goods were placed in the hotel in the latter part of September, 1887. On the first of October, 1887, the Berkey & Gay Company had a settlement with Stocking. Prior to this Stocking had paid them $2000 instead of $2500 named in the contract. The company at the time of the settlement took notes for the remaining amount owing them by Stocking for the goods they had sold him. At the time these notes were taken the giving of the chattel mortgage before referred to was discussed by Stocking and the Berkey & Gay Company, and it was decided that the latter did not then care for such mortgage, but if Stocking should at any time thereafter find that he was not going to be able to meet his payments as they became due he was to notify the Berkey & Gay Company and the mortgage could then be given.

After the terms of the lease contract were agreed upon between the hotel company and Stocking, and a few days after the trade between

Stocking and the Berkey & Gay Company, but prior to the time that the goods under the last named trade were delivered, and before Stocking took possession of the hotel, plaintiff had notice that Stocking was going to purchase his furniture from the Berkey & Gay Company and that deferred payments were to be secured by chattel mortgage. Plaintiff was told by Stocking that this mortgage would not exceed $4000. Plaintiff examined a copy of the bill upon which the written memorandum was indorsed, and the examination showed that after deducting the $2000 cash payment the remainder would be less than $4000. Stocking paid rents under his agreement for the months of October and November, 1887. In January, 1888, he realized that he would not be able to make his payment to the Berkey & Gay Company and so notified them, and on the 28th day of January the mortgage set up by the Berkey & Gay Company was executed to them by Stocking and duly filed for record. This was the first notice that the hotel company had that the Berkey & Gay Company made any claim for a mortgage exceeding $4000. At this time the hotel company and the Berkey & Gay Company discussed the question of priority of liens and the policy to be pursued toward Stocking, but neither party waived any right under its lien. Plaintiff's pleading alleged that subsequent to the date of the giving of this mortgage some further rents were collected by plaintiff, which collections were applied toward the payments of the then accruing rents.

In July, 1888, Stocking was owing the hotel company the sum of $2434.50. On the 13th of July, 1888, the hotel company levied a distress warrant upon all the goods in the hotel, including the goods mortgaged to the Berkey & Gay Company. On the 16th of July, 1888, it filed its petition in the District Court of Grayson County to recover of Stocking the amount due it, and to foreclose its landlord's lien on the property taken under the distress warrant.

To this suit the hotel company made the Berkey & Gay Furniture Company a defendant. It also made other persons defendants who held liens on part of the property taken under the distress warrant, but as none of these lienholders have appealed and as none of them have liens that conflict with the lien of the Berkey & Gay Furniture Company it is not deemed necessary to refer to their claims in detail. The only issue is between the hotel company and the furniture company.

The Berkey & Gay Furniture Company answered, asserted a superior lien by virtue of its equitable mortgage or lien, and by cross-action asked for judgment against H. W. Stocking and for a foreclosure of its mortgage. The case was submitted to the court without a jury. The court held the landlord's lien (of the Sherman Hotel Company) superior to that of the furniture company, and rendered judgment giving such preference, from which judgment the furniture company has ap-

pealed. The court filed special findings. The furniture company has assigned errors.

These assignments present several propositions of law, among which are the following:

1. That the court erred in not holding that the written memorandum signed by Stocking constituted a lien superior to that of plaintiffs, at least to the extent of the goods therein referred to, because appellee had notice of this agreement. (The goods, however, were not described in this memorandum.)

2. That the court should have held that the furniture company had a superior equitable lien on all of the goods sold to Stocking by virtue of both the written and verbal promises of Stocking to give a chattel mortgage thereon at a future day, and which was subsequently executed in January 1, 1888, after the goods had been delivered and placed in the hotel, and of which lien as contemplated by the parties, appellant contends, the appellee had full notice or could have had by the exercise of proper diligence and inquiry.

It may be doubted under the facts of this case whether the appellants retained any lien by virtue of the agreement with Stocking on the goods sold him, and which they delivered to him with only an understanding and promise from him to execute a chattel mortgage in the future. That was subsequently done, but not until the matter had been mooted between the parties and the execution of the mortgage had been postponed and left to the option of appellants whether they would require it or not. It may be conceded that a contract although of an executory nature may be construed to be good in equity as a lien when it is evident that the parties intended that it should operate as such. Here it is very evident from the terms of the agreement, as well as from the acts of the parties in reference to the execution of a chattel mortgage, that they did not intend those agreements to operate as the lien designed to secure the purchase money. It might therefore be difficult to hold that appellants after they had parted with the possession of the goods had any lien thereon either in law or in equity prior to the execution of the chattel mortgage in January, 1888. Newsom v. Beard, 45 Texas, 151; Jones on Liens, sec. 812. But suppose appellant did retain a lien on the goods that was valid as between it and Stocking, yet was it not ineffectual and void against the lien of the appellee since it was not recorded as required by law, and only partly in writing, until after the rights of the appellee had attached to the goods? The proper solution to this question can be reached, as we think, by a statement of a few propositions of law well settled on principle or by authority. It is not pretended that the furniture company made only a conditional sale of the goods to Stocking. It is a plain case of goods sold on a credit, the title vesting in the purchaser, but the vendor attempts to secure the payment of the purchase money

by an agreement for the subsequent execution of a mortgage or lien to that effect. To that extent and for that purpose only did the seller in this instance attempt even to reserve any right or title in the goods. We will here state one additional fact, viz.: When Stocking at last executed the chattel mortgage before referred to, in January, 1888, the rents for October and November, 1887, had been paid, but the rent for December and January (1888) had matured under the contract "and the rent for February would be due in two days" to the hotel company from Stocking. Clearly, therefore, at this time the appellee was a creditor of Stocking, and also, as we shall endeavor to show, a "lien creditor." We hold:

1. That a landlord is given by our statutes a "preference lien" upon the goods or effects of the lessee on the rented premises to secure the payment of the rents due or that may become due at any time before the legal termination of the lease or the expiration thereof, according to its terms. Sayles' Civ. Stats., art. 3122a, and notes; Marsalis v. Pitman, 68 Texas, 624; Livingstone v. Wright, 68 Texas, 706; Block v. Latham, 63 Texas, 414. (The two first cases limit Gains v. Barr, 60 Texas, 676, and also Association v. Cochran, 60 Texas, 620.) His lien is superior to that of an attaching creditor. Sullivan v. Cleveland, 62 Texas, 677.

2. That every chattel mortgage or lien on personal property, or reservation of any title or interest therein intended as a security for the payment of the purchase money or other debt, is, when the vendee or mortgagor is given or allowed to retain the possession of the property, void as to the *lien creditors* of such vendee or mortgagor with or without actual notice, unless such mortgage, lien, or reservation of title or interest in the property for the purpose aforesaid is in writing duly proved or acknowledged and filed for record as required by law in such cases. Sayles' Civ. Stats., arts. 3190a, 3190b; Lazarus v. Bank, 72 Texas, 354; Brothers v. Mundell, 60 Texas, 246; Key v. Brown, 67 Texas, 300; Overstreet v. Manning, 67 Texas, 663; Gay v. Hardeman, 31 Texas, 245. In Overstreet v. Manning, supra, it is said that only such creditors are meant as have secured their liens "by process of law," but the facts before the court did not require a decision of that point, and therefore the decision should be limited accordingly.

3. That a landlord, while the lease continues and the rents have accrued or are in legal contemplation under the contract certain to accrue or are accruing in his favor, should be regarded as a "creditor" (not a mere "mortgagee or lien holder," as that term has been construed) within the purview of the Act of 1879 relating to chattel mortgages, we have but little doubt. The words "or lien holders in good faith" used in that act refer to such liens as are created by contract or acts of the parties, but do not in our opinion include landlords who are

given expressly a preference lien by law when the goods are placed on the premises and are deemed creditors from the date of the lease. Any other construction would make landlords "general creditors" only, without any lien, as that term has been defined. All doubt, however, on this point is removed by the Act of 1885, where this expression is omitted, and it is now only subsequent "purchasers" who are required to act in good faith as to and to respect an unrecorded chattel mortgage if they have actual notice thereof. Sayles' Civ. Stats., art. 3190a; Key v. Brown, supra; Beals v. White, 94 U. S., 382.

We do not wish to be understood as holding that the Act of 1885 was enacted for this purpose only. It was perhaps also intended to have a more extended compass or operation not necessary now to be defined. But we recur to the question under consideration. Is the landlord a lien creditor within the meaning of these statutes, since the term "creditor" has been construed to denote only a lien creditor? Can he only become such creditor when he has resorted to judicial process to enforce his lien? The landlord's lien attaches independent of and without judicial process. The law gives it. The levy of the process would add nothing to it so far as the right is concerned. It is just as strong without as with a seizure under some writ of the court. A distress warrant is but a mode of enforcing the lien, but does not create it. The law does that. It arises from the relation of the parties under the agreement and from the status and situation of the property as defined by law. Templeman v. Gresham, 61 Texas, 50; Bourcier v. Edmondson, 58 Texas, 678; McKeen v. Sultenfass, 61 Texas, 325; Rosenberg v. Shaper, 51 Texas, 135; Marsalis v. Pitman, supra. We therefore think that a landlord is a lien creditor within the meaning of the law as much so as is one who has obtained a lien to secure the payment of his debt by the levy of an execution or an attachment. On principle we are unable to distinguish between the efficacy of the liens acquired or created by either mode. Otherwise, as we have said, landlords would be reduced to the state of "general creditors." The authorities cited show that an unrecorded chattel mortgage is of no avail against a creditor, with or without notice, who has obtained a lien by the levy of judicial process, and we think that likewise it must be regarded as void as against the landlord's lien, and that this conclusion is supported by just as cogent reasons. Both obtain the lien by operation of law. McKamey v. Thorp, 61 Texas, 651.

We will reinforce the views we have expressed on this subject and further elucidate the question with the following quotations from the brief of appellee's counsel, viz.: "In the cases we have cited it is decided that the landlord is such creditor, and that this lien is not acquired by the levy of a distress warrant. It exists independent of the warrant and even if the warrant is never sued out. If the position con-

tended for by counsel for appellant is true, let us see in what strange places it will put us.   I am a landlord; one proposes renting from me a printing house; before renting it he gives a chattel mortgage upon the goods which he places in it.   This mortgage is not put to record, but I have notice of it.   The tenant defaults in his rents and I sue him for the foreclosure of my landlord's lien, making the mortgagee a party defendant.   If after the suit is filed I sue out a distress warrant my rights are superior to those of the mortgagee, because his mortgage was not filed; but if I fail to sue out a distress warrant the mortgagee's rights are superior to mine, because I had notice of his mortgage.   The distress warrant has added nothing to my lien, has added nothing to my position of creditor, but yet there is to be attached to it some mysterious power, the magic influence of which no one can explain.   Take another illustration:   Property is mortgaged before it is placed on rented premises, but the mortgage is not placed on record.   It is levied upon by attachment.   The landlord now intervenes in the attachment suit to foreclose his landlord's lien, making the mortgage creditor a party.   The lien of the attachment is inferior to the landlord's lien, because the landlord's lien was complete before the attachment was levied.   The lien of the mortgage is inferior to the attachment lien and is void as to the attaching creditor, with or without notice.   But, say counsel for appellant, nevertheless the mortgage lien will be superior to the landlord's lien, because the latter did not sue out a distress warrant.   This raises quite an anomaly in the law.   The mortgage lien is inferior to the attachment lien, which itself is inferior to the landlord's lien, but this inferior mortgage lien is superior to the landlord's lien."

We are of the opinion that these statutes do not admit of a construction that would lead to such an anomalous state of affairs as would result from such judicial interpretations in cases like the present.   On the contrary, we think that as a landlord is, while the lease is existent, a "creditor" within the purview of these statutory provisions, an unrecorded chattel mortgage must be held, by force of the terms of the statutes, independent of the question of notice, to be just as ineffectual against the preference lien given him by the statute as it undoubtedly would be against such other creditors as have established their liens by the levy of judicial process.

We conclude that the judgment should be affirmed.

*Affirmed.*

Adopted May 19, 1891.