J. M. RADFORD GROCERY CO. v. PACE et al. (No. 8041.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 21, 1914.)

CHATTEL MORTGAGES (§ 144*)—PRIORITIES.

The agent of a seller of store fixtures incumbered by an unrecorded mortgage for the price permitted the buyer to remove the same to a building in which he intended to engage in business. On the same day the buyer, to induce a third person to loan him money secured by a mortgage on the fixtures, represented that they were his own free from liens. The mortgage to the third person was first recorded. *Held* that, under Rev. St. 1911, arts. 5654, 5655, providing for the recording of chattel mortgages to be good against subsequent mortgagees, the mortgage to the third person was superior to the mortgage of the seller.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 241; Dec. Dig. § 144.*]

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by the J. M. Radford Grocery Company against J. H. Pace and others. From a judgment for defendants Pace, plaintiff appeals. Affirmed.

Kirby & Davidson, of Abilene, for appellant. Glasgow & Kenan, of Seymour, and Cunningham & Oliver, of Abilene, for appellees.

BUCK, J. This case was tried by the court without the aid of a jury, and the court filed his findings of fact and conclusions of law, which findings of fact have not been attacked by the appellant, either as to their sufficiency or correctness, and the same will be adopted by this court, and, being rather full, will avoid the necessity of a further statement of the case and the issues of fact involved. Such findings of fact are as follows:

I. "The plaintiff's suit was brought on two promissory notes for $250 each, executed by the defendants L. C. Davis and Nat G. Mitchell payable to the order of the plaintiff, J. M. Radford Grocery Company, at Abilene, Tex., on December 20, 1910, and March 1, 1911, respectively, both dated October 17, 1910, bearing 10 per cent. interest from date, and containing the usual 10 per cent. attorney's fee clause, the note first due bearing credits, as follows, viz.: 12—20—10, ck. $50.00; 12—28—10, ck. $50.00; 2—27—11, ck. $25.00; 4—13—11, ck. $20.00."

II. "That said notes were secured by a chattel mortgage executed by the defendant L. C. Davis which conveyed to the plaintiff the following described property, to wit: One self-measuring oil tank; one Hall & Co. safe, weighing about 2,500 pounds; one upright desk; one stool; one invoice file system; one pair platform scale; one thread cabinet; one soap showcase; one chewing gum case; one 8-foot showcase; one 6-foot cigar showcase; two paper cutters; one clock; one paper mill; one pair Dayton computing scales; one fruit showcase; one McCreary refrigerator; one large coffee mill; one 18-foot counter with bins; one 20-foot counter; one 10-foot counter; one pair of trucks; one broom rack; one thread cabinet and desk; one cash register; one tobacco knife; one paper bag rack; one cracker rack; and one cheese cutter—located in the O. D. Goostree Building in the town of Seymour, Tex. The said Davis warrants title to said property to the plaintiff by the usual warranty clause, and said mortgage then contains the following stipulation, viz.: 'This conveyance is intended as a mortgage, I being indebted to the said J. M. Radford Grocery Company in the sum of nine hundred and no/100 dollars, as evidenced by my four certain notes bearing date 17th day of October, 1910, and due 10—25—10, 11—5—10, 12—20—10, 3—1—11, and payable to J. M. Radford Grocery Company at Abilene, Tex.' Then follows the usual defeasance clause of a chattel mortgage with power of seizure and sale to satisfy said indebtedness. This mortgage is dated October 17, 1910, and was filed for registration in the office of the county clerk of Baylor county, Tex., at 9:30 o'clock a. m., on October 18, 1910. This mortgage the plaintiff sought to foreclose."

III. "That the defendants J. H. Pace and J. T. Pace by their plea in intervention and cross-action sued the defendant Davis on a note for $200 executed by defendant L. C. Davis, payable to the order of J. H. Pace and J. T. Pace at Seymour, Tex., 12 months after date, and being dated October 17, 1910, bearing interest at the rate of 10 per cent. per annum, and containing the usual 10 per cent. attorney's fee clause."

IV. "That said note in favor of J. H. and J. T. Pace was secured by a chattel mortgage executed by defendant L. C. Davis, conveying to them the following property, viz.: 'The following fixtures heretofore used by W. R. Lee & Co. in its

mercantile business in Seymour, Tex., and now owned and used by me, which will be removed to the O. D. Goostree storehouse, to wit: One refrigerator; one pair of computing scales; one iron safe.' This mortgage also contained the following stipulations: 'I hereby warrant that said property is owned by me in good faith, under perfect title, free of all liens and incumbrances whatsoever, and I agree to hold the same where it is now located free of all liens other than the one hereby granted until the indebtedness hereinafter mentioned is paid in full. This conveyance, however, is intended as a mortgage, I being indebted to the said J. H. and J. T. Pace in the sum of two hundred dollars, as evidenced by one certain promissory note bearing date 17th day of October, 1910'—and further describing the note sued on. This mortgage then contains the usual clause of defeasance with power to seize and sell the property in satisfaction of said indebtedness. It is dated October 17, 1910, and was duly filed for registration in the office of the county clerk of Baylor county, Tex., at 5 o'clock p. m. on October 17, 1910."

V. "It was agreed by the parties to the suit that the safe, refrigerator, and computing scales mentioned (in) the chattel mortgage of the defendants J. H. and J. T. Pace are the same articles as the safe, refrigerator, and computing scales mentioned in the mortgage of the plaintiff."

VI. "That on the 29th day of September, 1911, the plaintiff sued out a writ of sequestration, and had the property covered by its mortgage seized by the sheriff under said writ about October 1, 1911, including the three articles covering the mortgage of the Paces, and said articles have since been sold by the sheriff and bought in by the plaintiff, and has admitted in open court that, if the mortgage of the Paces is found to be a prior or superior mortgage to the mortgage of the plaintiff, the plaintiff is liable to said Paces for the value of three articles of fixtures covered by the Paces' mortgage, not to exceed the amount of the note held by the Paces."

VII. "That on the 17th day of October, 1910, the plaintiff, acting solely through C. W. Gill as its agent, negotiated a sale of a portion of a certain stock of merchandise and store fixtures to the defendant L. C. Davis, said property being located in a storehouse in the McLain Block in the town of Seymour, and had been purchased by the plaintiff at a bankruptcy sale of W. R. Lee & Co.; that the negotiation of the sale of said property by plaintiff to Davis began early in the morning of October 17th, and was consummated in the afternoon; that in the forenoon an agreement was reached between plaintiff's agent Gill and Davis as to what goods and fixtures should be included in the sale, the price to be paid, and the amount to be paid in cash, time to be allowed on the deferred payments, and the amount of the respective notes and the character of security to be given on said notes; that it was definitely agreed upon between said Gill and Davis what articles of merchandise and fixtures were to be delivered out of the general stock to Davis, the fixtures being the same as those described in the second paragraph of these findings, and included the three articles covered by the mortgage of the Paces; that said Davis first offered to secure the notes given for the deferred payments by a chattel mortgage on the goods and fixtures sold to him, but Gill refused to accept this security, and demanded personal security on the notes such as would make the notes good; that Davis then offered Nat G. Mitchell as surety on the notes, and the said Gill investigated the financial responsibility of Nat G. Mitchell and ascertained that he was willing to sign the notes as surety for Davis, and accepted him as surety on said notes, and would not have made the trade if he had not thought that Mitchell made the notes good, but told Davis that he would take a chattel mortgage on the fixtures to protect Mitchell.

At this juncture nothing remained to be done to complete the transaction except the payment of the amount agreed upon, the execution and delivery of the notes and mortgage, and the putting of Davis in possession of the property. Plaintiff told Davis that he reserved title and possession to the property until the money was paid, and the notes and mortgage were executed and delivered, and Davis assented to this, but, as a matter of fact, went into possession of the goods before note and mortgage were delivered."

VIII. "That in the afternoon Gill permitted the said Davis to enter the building where said goods were located in the McLain Block and to take possession of same and to begin to remove the same from said building to the O. D. Goostree Building in Seymour, where Davis was to engage in business; that this possession of the said Davis was to continue from that time on; and that a portion of the goods and fixtures were removed by Davis during the evening of the 17th of October, and the remainder during the 18th of October, 1910."

IX. "That Davis had made arrangements with J. H. Pace and J. T. Pace to borrow from them the $200 to be paid to the plaintiff on said goods and fixtures, the negotiations for which were conducted solely by J. H. Pace for said Paces, J. T. Pace not being in Seymour at the time; that it was agreed between Pace and Davis that Davis was to give to Pace a chattel mortgage on the three items of fixtures described in the chattel mortgage declared on by the Paces, and described in paragraph 4 of these findings, to secure the Paces in the payment of said $200."

X. "That Pace and Davis went to the office of a notary public to have said mortgage drawn up, and that Davis, in order to induce said Pace to loan Davis said money, made in writing in the face of said mortgage the representations set out in paragraph 4 hereof, and, in addition thereto, he represented verbally to Pace that he (Davis) was in possession of the goods, and that the trade had been closed between him and plaintiff, and that he only lacked $200 he was borrowing from the Paces to enable him to pay the plaintiff for the goods, and that with such sum he could get the goods clear of incumbrance and would owe the plaintiff nothing on them; that Pace had known the said Davis for a year or more as a clerk in one of the leading mercantile establishments in Seymour, and relied on his representations, written and verbal, and was induced thereby to loan Davis said $200, and to accept the mortgage declared on by the Paces, and described in paragraph 4 hereof, as security for its payment."

XI. "That at the time the transaction mentioned in the preceding paragraph took place between Pace and Davis Davis was in possession of the goods and fixtures purchased by him from plaintiff, and had removed at least one load from the building in the McLain Block to the O. D. Goostree Building, and Pace knew of this fact."

XII. "That said Davis gave to the said Pace his note and mortgage described in paragraphs 3 and 4 hereof, and the said Pace gave to the said Davis a check for $200 on the First National Bank of Seymour, payable to the order of L. C. Davis; that as soon as said transaction was completed the said Pace went to the county clerk's office in Seymour to ascertain if there were any liens on the fixtures, and, finding none, filed his mortgage for registration at 5 p. m. October 17, 1910."

XIII. "That as soon as said check was delivered to Davis he went to Gill, in the building where the goods were located, and delivered to him the check of the said Pace, indorsing said check in blank, and that the plaintiff afterwards collected the amount of said check from said bank through its indorsee."

XIV. "That as soon as said check was delivered to Gill by Davis they went to the office of

Nat G. Mitchell, which was in the county courthouse of Baylor county, Tex., and there had the notes and mortgage in favor of plaintiff drawn up and duly executed by Davis and Mitchell as agreed upon, and they were delivered to the said Gill about 6 o'clock or 6:30 o'clock p. m. of their date—to wit, Oct. 17, 1910— and, when so delivered, the county clerk's office had been closed for the day, and Gill delivered the note and mortgage to a Mr. Spencer, an employé, of plaintiff at Seymour, and asked him to look after the matter and file the mortgage for registration."

XV. "That at that season of the year it was the rule and custom of the county clerk of Baylor county, Tex., to open his 'office at from 7:30 to 8 o'clock in the morning each day, and it was usually open by 8 o'clock or before that time, and no explanation has been made as to why said chattel mortgage of plaintiff was not filed before 9:30 o'clock on October 18, 1910."

XVI. "That the said Gill knew that Davis was borrowing the $200 from the Paces with which to make, or pay on, the cash payment to plaintiff, but had no actual knowledge of the execution by Davis to the Paces of the chattel mortgage sued on by them; also that Gill made no inquiries of Pace as to the nature of the transactions between him and Davis, and did not know the details of the same from actual knowledge, and that he and Pace never spoke to each other or communicated with each other in any way until long after this transaction was consummated, but remained absolute strangers to each other."

XVII. "That Pace made no inquiry to Gill as to the nature of the transactions between him and Davis, and had no knowledge of same, except what Davis told him. Pace's office was only 125 feet diagonally across the street from the building where the goods and fixtures were located at the time Pace loaned the money to Davis."

XIX. "That no part of the debt sued on by plaintiff has been paid, except the sum of $10 derived from the sale of the fixtures covered by the plaintiff's mortgage, and not included in the mortgage of the Paces."

XX. "That no part of the debt sued on by the Paces has been paid."

XXI. "That the iron safe, refrigerator, and computing scales seized and sold by the plaintiff covered by the mortgage of the Paces were worth at the time of their seizure $200."

XXII. "That the defendant L. C. Davis is insolvent."

In paragraph 9 of such findings of fact the court finds that appellant's agent, Gill, permitted L. C. Davis to enter the building where said goods were located and to begin to remove the same from said building to another building where Davis was to engage in business, and that this possession of said Davis was to continue from that time on, and that a portion of the goods and fixtures were removed during the evening of October 17, and the remainder during October 18, 1910. (Tr. pp. 30, 31.) And in paragraph 10 of such findings of fact, the court finds:

"That Davis, in order to induce said Pace to loan Davis said money, made in writing in the face of said mortgage the representations set out in paragraph 4 hereof," to wit, that said property upon which the chattel mortgage to the Paces was given was owned by said Davis in good faith under perfect title, free from all liens and incumbrances whatsoever, "and, in addition thereto, he represented verbally to Pace that he (Davis) was in possession of the goods, that the trade had been closed between him and plaintiff, and he only lacked $200 he was bor-

rowing from the Paces to enable him to pay the plaintiff for the goods, and that with such sum he could get the goods clear of incumbrance and would owe the plaintiff nothing on them; that Pace had known the said Davis for a year or more as a clerk in one of the leading mercantile establishments in Seymour, and relied on his representations, written and verbal, and was induced thereby to loan Davis said $200, and to accept the mortgage declared on by the Paces." (Tr. 31–32.)

The court further finds that at the time of the conversation between J. H. Pace and Davis and of the execution and delivery of the chattel mortgage from Davis to Pace, and the delivery of the check from Pace to Davis, that Davis was in possession of the goods and fixtures purchased by him from plaintiff, and had removed at least one load from the building where they were located, and that Pace knew of this fact.

From the above statement of the case, as contained in the court's findings of fact, we think that the judgment of the trial court, holding that the lien of the Paces upon the three articles described in the chattel mortgage given by Davis to them was a prior and superior lien to that held by the appellant, and since it was agreed by the parties to this suit that, in the event the court should so find, judgment should be rendered against the plaintiff and in favor of the defendants J. H. and J. T. Pace for $200, was correct. See Revised Civil Statutes 1911, arts. 5654, 5655; Crews v. Harlan, 99 Tex. 97, 87 S. W. 656, 13 Ann. Cas. 863; Eason v. De Long, 38 Tex. Civ. App. 531, 86 S. W. 349; Gay v. Hardeman, 31 Tex. 245; Furn Co. v. Hotel Co., 81 Tex. 141, 16 S. W. 807.

The judgment of the trial court is approved, and the case is affirmed.