ALSBURY v. ALSBURY et al.   (No. 6213.)

(Court of Civil Appeals of Texas.   San Antonio.
April 23, 1919.)

1. CHATTEL MORTGAGES ⊖197(1)—UNRECORDED MORTGAGES—CONSTRUCTION OF STATUTE —"CREDITOR."

A "creditor," within Rev. St. 1895, art. 3328, making unrecorded chattel mortgage void as against mortgagor's "creditors," is one who has acquired rights by an attachment or other process of law, and not merely a general creditor who has acquired no interest in the property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

2. CHATTEL MORTGAGES ⊖197(1) — PRIORITY OF LIENS — UNREGISTERED CHATTEL MORTGAGE.

Where judgment creditor caused execution to issue and be levied upon automobile in possession of judgment debtor, his lien attached at time of levy and was superior to lien of unregistered chattel mortgage on automobile of which he had no notice at such time, notwithstanding notice at time of execution sale.

Appeal from Bexar County Court for Civil Cases;   John H. Clark, Judge.

Action by T. J. Alsbury against William Alsbury and others. From judgment rendered, plaintiff appeals. Affirmed.

Chambers & Watson, of San Antonio, for appellant.

Keller & Woodhull, of San Antonio, for appellees.

COBBS, J. Appellant's cause of action was that he delivered to W. M. Alsbury one seven-passenger Packard auto, 1910 model 12 body, serial No. 11371, but gave no bill of sale to defendants; but it was intended between plaintiff and defendant Alsbury: That no title should pass to defendant, plaintiff Alsbury should pay for said automobile in full, and that defendant should have the right to become the owner of said automobile only when he should have paid the sum of $400 and interest in monthly payments, and was understood and agreed that said automobile should remain good as security therefor until above amount should be paid off and discharged. That should it be found or determined under the law title passed to defendant Alsbury, and Alsbury became indebted to plaintiff, then plaintiff, under the law, has a lien on said auto for purchase price, or that said auto under the law stood good for purchase price thereof, and that plaintiff has a lien therefor and not absolute title therefor, holding that a reservation of title is lien under the law. That there is still due a balance of $385. That Ben Fisk is claiming some interest thereon, and Hulda Oeding is claiming some interest therein,

He prays for possession of said automobile, or in the alternative a judgment for $385, interest and costs.

W.m. Alsbury answered by general denial and special answer: That T. J. Alsbury held a verbal lien on said property and title was in plaintiff until defendant paid him $400. That Hulda Oeding had a valid, written unrecorded mortgage on said automobile to secure $150. That both of said liens were prior to that of Ben S. Fisk, who had notice of same when he purchased same at execution sale for $200.

Hulda Oeding answered asking judgment for $150 and foreclosure of her said unrecorded lien.

Ben Fisk answered setting up his judgment against W. M. Alsbury, a second execution, levy, and sale thereunder, and his purchase thereof for $200, which was credited on the execution and judgment.

This case was tried without a jury, and the court gave judgment in favor of T. J. Alsbury for $385 with 8 per cent. interest per annum against W. M. Alsbury, for Hulda Oeding for $150 with interest at 8 per cent. per annum against W. M. Alsbury, but that neither take anything on their mortgages pleaded, and that Ben S. Fisk go hence without day with his costs against them both.

The court at request of plaintiff and Hulda Oeding filed findings of fact and conclusions of law, which we copy:

### Findings of Fact.

"(a) T. J. Alsbury made a loan of money to W. M. Alsbury with which to buy an automobile, and W. M. Alsbury bought the automobile herein involved from some third person. T. J. Alsbury never at any time had title or possession of said automobile, and did not sell the same to W. M. Alsbury.

"(b) There was a verbal agreement between T. J. Alsbury and W. M. Alsbury on the 25th day of February, A. D. 1918, that the title to the automobile should remain in T. J. Alsbury until W. M. Alsbury had paid T. J. Alsbury the sum of four hundred dollars ($400.00), but at the time such agreement was entered into a third party was the owner and held possession of the automobile, and afterwards sold the same to W. M. Alsbury on the 26th day of February A. D. 1918.

"(c) W. M. Alsbury had not paid T. J. Alsbury the full sum of $400.00 at the time of the trial and is now due him the sum of $385.

"(d) There was never at any time a sale of the automobile by T. J. Alsbury to W. M. Alsbury either prior or subsequent to the levy of the execution thereon by Ben S. Fisk. W..M. Alsbury bought the automobile from some third person and from the time of such sale and at all times thereafter retained the title and possession of same in himself, W. M. Alsbury.

"(e) Ben S. Fisk held a judgment against W. M. Alsbury and caused an execution to issue upon such judgment, and caused said execution to be levied upon the automobile in question.

"(f) Ben S. Fisk bid in the automobile at the execution sale, and credited the amount of his bid $200.00 upon the judgment he held against W. M. Alsbury.

"(1g) Ben S. Fisk was given notice for the first time at the execution sale that T. J. Alsbury claimed to have sold the automobile to W. M. Alsbury and verbally retained the title at the time he claimed to have made the sale to W. M. Alsbury, but I find in this connection that T. J. Alsbury never at any time had title or possession of said automobile, and that he did not in fact at any time sell the same to W. M. Alsbury, but that W. M. Alsbury bought the automobile from a third person subsequent to the time T. J. Alsbury claims to have sold it to W. M. Alsbury.

"(2g) I find that Hulda Oeding did not give notice at the sale of an unrecorded mortgage that she held on the automobile, but that she gave notice that she held a mortgage against said automobile, and that the mortgage she held was regularly filed and placed of record as required by law. I find that she did not hold a recorded mortgage as she gave notice of at the time of the sale, but I find that she did, at the time of the execution sale, hold an unrecorded mortgage against the automobile, but gave no notice of same, and Ben S. Fisk had no notice of same prior to or at the time of the sale.

"(h) Ben S. Fisk was the purchaser of the automobile at the execution sale, and credited the amount $200.00 he bid the automobile in at on the judgment he held against W. M. Alsbury.

"(i) Hulda Oeding held a written unrecorded mortgage against the automobile prior to the time B. S. Fisk had his execution levied upon the automobile. Ben S. Fisk was given notice for the first time at the execution sale that Hulda Oeding held a written mortgage which had been placed of record, but I find that Hulda Oeding's written mortgage had not been recorded as claimed by her at the time of the execution sale, and having claimed in her notice that her mortgage was of record, and the mortgage records showing that such was not true as to *being recorded. Such statements as was made* at the execution sale was no notice of her unrecorded mortgage, as mortgage was not recorded until two days after sale to Ben S. Fisk."

### Conclusions of Law.

"Ben S. Fisk was a creditor of W. M. Alsbury within the meaning of the word 'creditor' as used in articles 5654 and 5655, Vernon's Sayles' Texas Civil Statutes, and being a creditor of W. M. Alsbury as that term is used in the statute, the verbal lien claimed by T. J. Alsbury and the written unrecorded mortgage held by Hulda Oeding were each absolutely void as against the rights of the creditor Ben S. Fisk, and it was immaterial as to whether the creditor Ben S. Fisk had notice of such liens or not, or as to whether he bought for value at the execution sale, as his interest attached at the time of the levy of the execution."

Appellant has properly assigned errors and proper propositions of law thereunder, and, without taking them up separately, we will discuss them in disposing of the case.

The language of plaintiff's pleading is very much in the language used in Crews v. Harlan, 99 Tex. at page 95, 87 S. W. 658, 13 Ann. Cas. 863, and appellant cites us to this

case. In that case the very question of oral mortgage here presented was referred to the Supreme Court to answer:

"Did the verbal reservation of title in appellee to the property, at the time of the sale, to secure the purchase money thereof (possession of said property being delivered to the appellant at the time of sale), constitute a valid mortgage between appellant and appellee?"

While the court answered the question in the affirmative, it said:

"We are also of the opinion that this would be the effect of the statute, whether or not under the previous law a chattel mortgage may be created by contract merely oral. Whether ordinarily a chattel mortgage may be so created is a question the determination of which is not necessary to the decision of the question certified, and we therefore express no opinion upon it."

See Crews v. Harlan, 99 Tex. 93, 87 S. W. 656, 13 Ann. Cas. 863.

If therefore, as seen, a verbal mortgage is good between the parties, it stands as an unrecorded mortgage. Article 3328, Rev. St. 1895:

"Every chattel mortgage * * * shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lien holders in good faith, unless such instrument or a true copy thereof shall be forthwith * * * filed," etc.

In Stewart & Alexander Lumber Co. v. Miller & Vidor Lumber Co., 144 S. W. 345, it is said, construing this article 3328, hereinafter set out:

"That an unrecorded chattel mortgage is not void as against the parties thereto. * * * By the terms of this article the unrecorded mortgage of appellee was absolutely void as to creditors and as to subsequent purchasers and mortgagees and lienholders in good faith. As said by Chief Justice Finley in Oak Cliff College v. Armstrong [20 Tex. Civ. App. 351] 50 S. W. 613: 'A clear distinction is drawn between the two classes by the statute. It does not make the requirement of good faith as to creditors in order that the unregistered mortgage become void; but it does make such requirement of subsequent purchasers, mortgagees, etc. * * * [Citing authorities.] * * * The logic of these decisions would seem to include within the term "creditors" all persons whose claims are, upon certain conditions, charged by law as specific liens upon certain property, such as holders of attachment, execution, judgment, landlord, and mechanics' liens, and to exclude therefrom all others.' "

On motion for rehearing, the court cited Furniture Co. v. Hotel Co., 81 Tex. 135, 16 S. W. 807.

"The judgment was but a means of enforcing the lien, and did not create it. * * * A lienholder in good faith is one who pays a valuable consideration at the time of acquiring the lien and is without notice of the prior unrecorded mortgage."

Continuing after the quotation:

"It is manifest that we did not intend by this paragraph of the opinion to hold that if, by the rendition of the judgment referred to, appellee lumber company acquired such a lien as would make it a 'creditor' of the Holloday–Shelker Lumber Company within the purview of article 3328, R. S., it was necessary for it, in order to defeat appellant's mortgage, to show it paid a valuable consideration for its lien without any notice of appellant's mortgage."

In Overstreet v. Manning, 67 Tex. 657, 663, 4 S. W. 250, 251, it is said:

"It has been heretofore held by this court that a chattel mortgage, not filed for record as required by law, is void as to a creditor, though he may have had notice of the instrument. Brothers v. Mundell, 60 Tex. 240. It was not expressly held in that case that the creditor must have acquired some right in the mortgage property by attachment, execution, or otherwise; for the creditors whose rights were protected by the decision had levied an attachment upon the property, and there was no question made upon this point. * * * The statute puts mortgagors and other lienholders by contract or act of the parties upon the same footing. Other creditors, to come within its protection, must have acquired a lien by proceedings at law."

[1] The "creditor," within the meaning of the statute, is one who has acquired rights by an attachment or other process of law, and not merely a general creditor who has acquired no interest in the property. Snyder v. First National Bank, 32 S. W. 162; Oak Cliff College For Young Ladies v. Armstrong, 50 S. W. 610; Eason v. Garrison, 36 Tex. Civ. App. 574, 82 S. W. 801.

[2] Ben Fisk caused an execution to issue and be levied upon said property, and he became eo instanter a lien creditor, and within the letter of the chattel mortgage statutes was a lienholder without any notice prior to that time of appellant's claim.

At the time of the sale of the automobile, he was notified of appellant's claim. Such notice at that time was not sufficient. It came too late, the status of the parties had been fixed, and Fisk was a subsequent lien creditor by virtue of the levy, and therefore superior to the claims of appellant, or of Hulda Oeding, who held under an unregistered mortgage of which he had no notice.

We have considered all the assignments and overrule them.

The judgment of the court is affirmed.