FIRST NATIONAL BANK OF HICO ET AL. v. HAMILTON NATIONAL BANK.

Decided December 22, 1897

**1. Estoppel—Representations—Intention to Deceive.**

Estoppel does not rest solely upon the intention to mislead and deceive by the party making the representations; for, if they are innocently made, about facts with which he should be acquainted, and they are calculated to mislead and deceive a man of ordinary prudence, he will be held to the effect of the representations.

**2. Same—Fact Case.**

Plaintiff, having a lien on cotton to secure advances made to a buyer, accepted, on its claim, $5000 obtained from defendant by a transfer of the same cotton, on the assurance, innocently made by defendant to plaintiff, that the money was not obtained by transfer of the cotton in question. *Held,* that plaintiff was not estopped by the receipt of such money from asserting its lien for the remainder of the debt against such cotton in defendant's hands.

**3. Pleading—Lien—Pledge.**

Though pleadings describe as a pledge the security therein claimed, yet, if the

facts pleaded and proven show that it was in fact a lien, not accompanied by possession, calling it by the wrong name does not constitute a variance.

ERROR to Hamilton.   Tried below before Hon. J. S. STRAUGHAN.

*C. W. Cotton, J. C. Roberts,* and *Lindsey & Goodson,* for plaintiffs in error.—1.   The court erred in overruling defendant's general demurrer to plaintiff's tender of issues, because the plaintiff alleged that its right to said cotton was that it held it as a pledge, it having been pledged to it by Bell, and in that connection it alleged that all of said cotton was and had been in the personal possession of Bell, and was in his possession at the bringing of the suit, and at the time of sequestrating the same, and therefore said tender of issues affirmatively showed that plaintiff did not and could not hold the same as a pledge, because no right in the same as a pledge could exist as against Bell, or anyone else, with the possession of the cotton being in Bell, possession being absolutely necessary in the pledgee to support the right of a pledge.   3 Texas, 119; 18 Am. and Eng. Encyc. of Law, 598, and authorities there cited under notes 2 and 3; Jones on Liens, under title of "Pledge."

2.   In order to constitute estoppel there must concur, a false representation of a material fact, to a party ignorant of the truth of the matter, made with the intention, actual or virtual, that it should be acted upon, and by which the party is induced to act thereon, and made with the knowledge of the facts—that is, the party sought to be estopped must have been put upon sufficient notice, at the time, that the inquiry was made for the purpose of being acted upon, and that it related to some transaction then pending on the part of the other party on which he was intending to act and might be misled to his injury.   And therefore, the court erred in not sustaining defendant's exceptions to plaintiff's plea of estoppel, because said plea was defective in all the above elements pointed out in the various subdivisions of defendant's exceptions to said plea.   71 Texas, 689; 28 Texas, 416, 730; 58 Texas, 295; 74 Texas, 360; Bigelow on Estop., 5 ed., 570.

*J. A. Edison,* for defendant in error.—1.   It is not necessary in order to constitute an estoppel that the representations should be made with the intention that they should be acted upon; if a person by a course of conduct or by actual expressions so conducts himself that another may reasonably infer that a certain state of things exists and acts on that inference, he shall afterwards be estopped from denying it.   Giddings v. Baker, 80 Texas, 313; 2 Pom. Eq. Jur., 811; Bigelow on Estop., 2 ed., 485; Thomp. on Corp., 4777.

2.   It is not necessary in order to constitute an estoppel that the party making the representations had knowledge concerning the truth of the facts represented; although he may have been ignorant of or mistaken as to the real facts, if he was in such a position that he ought to have known them it would be sufficient, and Moss, the party making the representa-

tions, being the cashier of defendant bank, was in a position that he ought to have known the real facts, and knowledge of them would be imputed to him.   Weinstein v. Bank, 69 Texas, 42; Giddings v. Baker, 80 Texas, 313; 2 Pom. Eq. Jur., 809; Thomp. on Corp., 4781, 4783, 4929, 4931.

FISHER, CHIEF JUSTICE.—On the 16th of February, 1893, the defendant in error, the Hamilton National Bank, brought suit against Thomas Bell to recover the sum of $5966.37, and to foreclose a lien on 238 bales of cotton.   Writ of sequestration was sued out and levied on 110 bales of the cotton.   Thereupon the plaintiff in error, the First National Bank of Hico, filed its claimant's affidavit and bond, claiming the cotton in controversy.

The court below rendered judgment in favor of the defendant in error for $276.93, with interest at 6 per cent per annum from the date of the claimant's bond, with a foreclosure of the lien on the 110 bales of cotton in controversy, and against plaintiff in error and the sureties on its claimant's bond, with the 10 per cent damages allowed by statute.

The real controversy in the case is as to the ownership of the 110 bales of cotton, and as to whether the plaintiff in error, or the defendant in error, has the superior right thereto.

On the issues made up in the court below the defendant in error claimed that it had a superior right and lien upon the cotton by virtue of a contract between it and Thomas Bell, wherein it was agreed that the Hamilton National Bank would furnish to Bell, who was a cotton buyer, money to purchase cotton, and that defendant in error should have a lien upon the cotton so purchased to secure it for the advances made; that Bell, in shipping and selling cotton, should take the bill of lading in the name of the defendant in error, and that the returns should be made to it covering the amount advanced, together with the interest agreed upon. And it is alleged that the cotton in question was purchased by Bell under that contract with the funds furnished by defendant in error.

The plaintiff in error, in effect, alleged that the cotton in question was purchased by Bell under his contract made with the defendant in error; and, by reason of the course of dealing between Bell and the defendant in error, Bell was authorized to sell, transfer, and hypothecate the cotton so purchased, in order to raise funds to repay defendant in error the moneys advanced; and that the plaintiff in error, by an arrangement between it and Bell, did loan and advance to Bell on said cotton, $5000, in consideration of which Bell transferred to it the cotton in controversy; that the $5000 was advanced for the purpose of paying the defendant in error the amount due it by Bell, and that such amount was paid to defendant in error, and was accepted by it, and that by reason thereof, it has lost whatever right it ever had in the cotton in question.

Defendant in error to this replied, that Bell, at the time that the $5000 was paid, was indebted to it about $10,872, and that the defendant in error had, by reason of the contract between it and Bell, a lien upon 238 bales of cotton, a part of which was the 110 bales in controversy; that

before it accepted payment of the $5000 advanced to Bell by the plaintiff in error, it inquired of Bell and the cashier of the plaintiff in error bank whether Bell had transferred to it any of the 238 bales of cotton to secure the $5000 advanced to Bell by the plaintiff in error; and that said Bell and the plaintiff in error then and there informed the defendant in error that no such transfer had been made; and further alleges that it was not the purpose of the defendant in error to release any of its right or lien upon any of the 238 bales of cotton, and that it accepted the $5000 payment upon the strength of said representations and statements made to it by Bell and the cashier of plaintiff in error, and it believed such statements at the time to be true, and if it had known otherwise it would not have accepted the $5000; and from these facts, in effect, pleads that the plaintiff in error is estopped from setting up any right, claim, or lien to the cotton in question.

It was further claimed by the plaintiff in error, that, when it acquired the cotton in question from Bell, the 110 bales were segregated from the 238 bales, and that they were designated by marks and set apart for the plaintiff in error.

On this issue there is testimony coming from the defendant in error which tends to show that such was not the case; that all of the 238 bales were together, and that there were no marks of identification on these 110 bales distinguishing them from the balance of the cotton, and that they were not separated or set apart.

We will not undertake to set out all of the facts upon which we base our conclusions, but there is abundant evidence in the record establishing all the material averments contained in the pleadings of the defendant in error. It was shown that it did have a lien upon the cotton in question which was never released, and that it accepted the $5000 upon the strength of the representations made to it by the plaintiff in error that Bell had not transferred to it the cotton in question, and that it believed these representations to be true at the time, and that it would not have accepted the $5000 if it had known that they were not true, and that it was never the purpose of defendant in error to release any right or claim that it had in any of the 238 bales of cotton.

The plaintiff in error filed certain special exceptions, calling in question the sufficiency of the averments of the plea of estoppel urged by the defendant in error. The court overruled these demurrers, to the action of which the assignments mainly relate. The estoppel was well pleaded. It appears from the averments that the defendant in error had a superior lien upon the entire 238 bales of cotton, to cover the indebtedness due it by Bell; that, when the plaintiff in error paid to the defendant in error the $5000 it had agreed to advance to Bell on the 110 bales of cotton, the defendant in error, before it would accept and receive the same, inquired of Bell and the plaintiff in error whether this amount was secured by any transfer or lien from Bell to the plaintiff in error on any of the 238 bales of cotton. The plaintiff in error thereupon stated and represented that it had acquired no such right or transfer, and it appeared that by reason of

these representations, which the defendant in error then believed to be true, it accepted from the plaintiff in error the $5000. These representations were of such a character as were calculated to lead a man of ordinary prudence to act upon them. And it is apparent from the facts alleged and the facts in evidence that when the defendant in error did act upon them it was misled and deceived to its injury about a matter that materially affected its superior right in the entire 238 bales of cotton.

Estoppel does not rest solely upon the intention to mislead and deceive by the party making the representations, for, if they are innocently made about facts with which he should be acquainted, and they are calculated to mislead and deceive a man of ordinary prudence, he will be held to the effect of the representations, although he did not intend that such effect should be given them.

What is here said also disposes of the plaintiff in error's seventh and eighth assignments of error.

In reply to the first assignment of error, it may be said that while it is true the defendant in error spoke of its right in the property as a pledge, yet, notwithstanding it may call it by this name, the facts pleaded and the facts in evidence show that in legal effect it had a superior lien on the property in question.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*