**KEYSTONE PIPE & SUPPLY CO. v. MILNER. (No. 3026.)**

Court of Civil Appeals of Texas. Amarillo. May 16, 1928.

**1. Corporations ⬤⟹422(1)—Rule of estoppel covers misrepresentations of agents in scope of employment.**

The rule of estoppel between parties covers misrepresentations of agents, even agents of corporations, when made in scope of their employment; principal being estopped to deny truth of agent's statements, whether express or tacit.

**2. Corporations ⬤⟹422(5)—Corporation held estopped by branch manager's statements as to well driller's ownership of casing furnished by it under contract unknown to manager.**

Corporation knowing of its contract with oil well driller to furnish casing was estopped by its branch manager's express or tacit statements, within scope of his authority, that driller was owner of such casing and that its presence in well made it safe for landowner to contract for additional casing, though such manager did not know of contract.

**3. Estoppel ⬤⟹72—One of two innocent parties who trusts most must suffer most.**

Where one of two innocent parties must suffer, he who trusts the most must suffer the most.

**4. Mines and minerals ⬤⟹116—Landowner advancing money and extending credit to oil well driller before acquisition of lien on casing conduit of defendant, relied on as estopping it to claim casing under unregistered contract with driller, held not entitled to priority, whether contract was chattel mortgage or not (Rev. St. 1925, art. 5489).**

Amount advanced and credit extended by landowner to oil well driller employed by lessee for work done, gasoline furnished, etc., before acquiring lien on casing in well and prior to acquiescence and representations by branch manager of corporation, claiming casing under rental contract, that driller was owner thereof, and that its presence in well made it safe for owner to contract for additional casing, did not constitute valid consideration and make owner a lienholder in good faith entitled to priority, whether or not rental contract was chattel mortgage, required to be registered by Rev. St. 1925, art. 5489.

**5. Estoppel ⬤⟹58—Party urging estoppel by misrepresentation and acquiescence must have acted to his prejudice in reliance thereon.**

One of essential elements necessary to constitute an equitable estoppel by misrepresentation and acquiescence is that party urging estoppel acted to his prejudice in reliance on such misrepresentation and acquiescence.

**6. Chattel mortgages ⬤⟹139—Lienholder in good faith is one paying valuable consideration when acquiring lien and without notice of prior unregistered mortgage.**

A lienholder in good faith is one who pays a valuable consideration at time of acquiring lien and is without notice of prior unregistered mortgage.

**7. Trial ⬤⟹350(3)—Special issue whether landowner was induced to sign casing rental contract by statements or acquiescence of agent of corporation, claiming casing already in oil well, that owner was safe in taking lien thereon, held erroneous under evidence.**

Special issue whether landowner was induced to sign rental contract for oil well casing by statements or acquiescence of branch manager of corporation renting casing already in well to driller that owner was safe in taking lien thereon *held* erroneous, in view of owner's testimony that he agreed to advance money for additional casing before any conversation with such manager, and would ´have advanced it without such representations or assurance by latter.

**8. Mines and minerals ⬤⟹116—Corporation renting casing to oil well driller held entitled to remainder of proceeds of sale thereof after landowner recovered money paid for rental of additional casing in satisfaction of his judgment against driller for work, gasoline, etc.**

Corporation claiming casing in oil well under rental contract with driller *held* entitled, under evidence, to remainder of proceeds of sale thereof after landowner signing contract with corporation for rental of additional casing received money paid by him on latter casing in satisfaction of judgment against driller for work done, gasoline furnished, etc., before acquiring lien on casing already in well.

Appeal from District Court, Wilbarger County; Robert Cole, Judge.

Action by T. J. Milner against the Keystone Pipe & Supply Company and others. Judgment for plaintiff, and defendant, Keystone Pipe & Supply Company, appeals. Reversed and remanded.

Slay, Simon & Smith, of Fort Worth, and Storey, Leak & Storey, of Vernon, for appellant.

Berry, Stokes, Warlick & Gossett, of Vernon, for appellee.

JACKSON, J. This suit was instituted in the district court of Wilbarger county, Tex., by the plaintiff, T. J. Milner, against the Keystone Pipe & Supply Company, W. F. Edmonson, and E. C. Coan, defendants.

The plaintiff alleges: That in 1926, as owner, he executed an oil and gas lease to James H. Gardner, covering 100 acres of section 31, block 9, in Wilbarger county, Tex. That Gardner, or his assigns, was obligated to drill a well on said lease to the depth of 2,500 feet to test the land for gas and oil. That Gardner, in some manner unknown to plaintiff, arranged for drilling a well on said lease with C. W. Whitehead, who began the drilling thereof about April 18, 1926. That C. W. Whitehead represented to plaintiff that other parties who were financially able were furnishing the money to drill the well and

all indebtedness incurred in so doing would be paid. That C. W. Whitehead employed plaintiff at $5 per day to assist in the work, arranged with him to do certain hauling, furnish gasoline, and to incur other expenses necessary to drilling the well, by which Whitehead became indebted to plaintiff in the aggregate amount of $810.80. That during the drilling it was necessary to have several hundred feet of 6⅝-inch casing to use in the well which Whitehead was unable to obtain in any way. That he requested plaintiff to assist in procuring such casing and represented, through his agents, that 1,500 feet of 10-inch casing and about the same amount of 8-inch casing then in the well belonged to Whitehead, and promised and agreed that if plaintiff would assist in obtaining said 6⅝-inch casing he should have a lien on the 8 and 10 inch casing and hold it in his possession until all of his money was paid, including the $810.80 above mentioned, and in the event the money or any part thereof was not paid, plaintiff should sell said 8 and 10 inch casing and retain a sufficient amount of the proceeds thereof to discharge the moneys due him. That plaintiff agreed, on the security offered, to assist in procuring the 6⅝-inch casing, and, in company with the agent of C. W. Whitehead, went to the Keystone Pipe & Supply Company, advised its agents of the fact that it was necessary to have the 6⅝-inch casing, and was informed that the rental on such casing would be $656.25, which was demanded in cash, and that the payment of any damage done to said casing or other expenses incident thereto would have to be secured. That he explained to the agent of the Keystone Pipe & Supply Company the arrangements he had for a lien on the 8 and 10 inch casing in the well, and was informed by such agent that Whitehead owned said 8 and 10 inch casing and plaintiff would be safe in accepting a pledgee's lien thereon and advance the money to pay the rental for the 6⅝-inch casing, and led plaintiff to believe that Whitehead owned the 8 and 10 inch casing and had the right to give a pledgee's lien thereon. That relying on such representations, he paid the $656.25 as rental on the 6⅝-inch casing, which was delivered and used in the well, but which, when completed, was a nonproducer.

That after the well was completed, C. W. Whitehead failed and refused to pull said 6⅝-inch casing and return it to the Keystone Pipe & Supply Company, as per the agreement, and the company pulled said casing at its own expense, which, with the return thereof and the damage thereto, amounted to $198.10, which plaintiff was required to pay, making a total amount which Whitehead was due to plaintiff on the 6⅝-inch casing, $854.-35, all of which was and is secured by plaintiff's pledgee's lien against the 8 and 10 inch casing, which was and still is in the possession of plaintiff.

Plaintiff's allegations relative to a judgment obtained by E. C. Coan against C. W. Whitehead and the foreclosure of a laborer's lien against the 8 and 10 inch casing, the issuance of an order of sale, placing it in the hands of W. F. Edmonson, as sheriff, the invalidity of the foreclosure of the alleged lien by E. C. Coan on the 8 and 10 inch casing against plaintiff, the failure of the sheriff to seize said casing, etc., it is unnecessary to set out in detail, because E. C. Coan and W. F. Edmonson were both dismissed from the suit on their respective pleas of disclaimer, to which no objection is made.

Plaintiff alleges that the Keystone Pipe & Supply Company filed an affidavit and claimant's bond with the sheriff, W. F. Edmonson, claiming the 8 and 10 inch casing; that plaintiff had been granted a temporary injunction restraining the sheriff from delivering said casing to the Keystone Pipe & Supply Company, and asked that such temporary injunction be made permanent.

Plaintiff further alleges that in cause No. 4287 in the district court of Wilbarger county, he obtained a judgment for his debt against C. W. Whitehead, and a foreclosure of his pledgee's lien against the casing involved in this controversy, which judgment has become final, but on account of the threats of the Keystone Pipe & Supply Company, to take possession of said casing and the filing of the claimant's affidavit and bond with the sheriff, plaintiff is not able to have said 8 and 10 inch casing sold on its judgment under execution; that because of the representations of the agent of the Keystone Pipe & Supply Company, to the effect that C. W. Whitehead was the owner of the 8 and 10 inch casing, its agreement and approval of the statement of plaintiff and the agent of C. W. Whitehead that plaintiff was obtaining a pledgee's lien on such casing and its acquiescence in such lien and plaintiff's reliance on such representations and acquiescence, and but for which he would not have advanced the money for C. W. Whitehead or paid to the Keystone Pipe & Supply Company rent for the 6⅝-inch casing, which it accepted, as well as the expenses for pulling and restoring the casing, the said Keystone Pipe & Supply Company is estopped from claiming said casing or asserting any title thereto. He prays for an injunction and a foreclosure of his pledgee's lien against all the defendants.

C. E. Coan and W. F. Edmonson, as above stated, disclaimed and were dismissed from the suit.

The Keystone Pipe & Supply Company answered by general demurrer, special exceptions, general denial, and pleaded that it was and is the owner of the 8 and 10 inch casing; that it furnished it to C. W. Whitehead under a written rental contract of date July 13, 1926, under and by the terms of which it

leased to Whitehead, for a period of 60 days, 1,400 feet of 10-inch casing at and for the agreed rental, in advance, of 25 per cent. of the selling price of said casing for the first 60 days, and 10 per cent. of the selling price of said casing, payable in advance, for each 30 days thereafter, all of which C. W. Whitehead agreed to pay; that the contract provided that failure to pay rentals promptly should, at the election of the lessors, terminate the contract; and that at the termination of said contract Whitehead should return all of said casing to the yards of the Keystone Pipe & Supply Company in Vernon, Tex.; that said casing was placed in an oil and gas well being drilled on the property of the plaintiff; that said well was completed or abandoned as a dry hole, and the said Whitehead, under the contract, was bound to return said casing, but he advised this defendant that he was unable to do so and requested it to pull the casing and return it and charge the expenses thereof to him, as the contract provided; that it attempted, in pursuance of this arrangement with Whitehead, to pull said casing, but plaintiff refused to permit it to do so.

The Keystone Pipe & Supply Company denied that it represented to the plaintiff that the 8 and 10 inch casing belonged to C. W. Whitehead and that plaintiff was safe in taking a pledgee's lien, but alleges that plaintiff knew, at the time he rented from it the 6⅝-inch casing, that the 10-inch casing was rented by C. W. Whitehead and belonged to it and would not be subject to a pledgee's lien made by Whitehead to the plaintiff. It asked that the temporary injunction be dissolved, and pleads that plaintiff is withholding the possession of said 10-inch casing from it, and alleges certain items of damages for so doing, for which it seeks judgment.

In response to special issues submitted by the court, the jury found, in effect, that D. C. Arrance stated and represented to the plaintiff or led him to believe that the 10-inch casing was the property of C. W. Whitehead at the time plaintiff paid the Keystone Pipe & Supply Company the rent for the use of the 6⅝-inch casing; that plaintiff stated, in the presence of D. C. Arrance, that he (plaintiff) was safe in advancing the rental on the 6⅝-inch casing because he had taken a lien on the 10-inch casing involved in this suit from C. W. Whitehead; that plaintiff was induced to sign the rental contract for the 6⅝-inch casing by the statements or acquiescence of D. C. Arrance to the effect that plaintiff was safe in taking a lien on the 10-inch casing; that the Keystone Pipe & Supply Company was not damaged by the issuance of an injunction in the case.

On this verdict, the court rendered judgment against all the defendants, perpetuating the temporary injunction theretofore granted, and against all of them, foreclosing plaintiff's pledgee's lien against the 10-inch casing in-

volved, and instructed the clerk to issue an order of sale to the sheriff, commanding him to seize and sell said 10-inch casing as under execution, and from the proceeds of such sale to pay the judgment in cause No. 4287 on the docket of his court entitled T. J. Milner v. C. W. Whitehead, rendered at the August term, in 1927.

From this judgment, the Keystone Pipe & Supply Company, hereinafter called appellant, prosecutes this appeal.

The appellant presents as error the action of the court in foreclosing appellee's lien and perpetuating the injunction against it, because the testimony fails to show that Mr. Bromley, the superintendent and agent of C. W. Whitehead, was authorized to give appellee a lien on the casing, does not show that appellee was induced, by the representations and acquiescence of Mr. Arrance, to pay the rental on the 6⅝-inch casing, nor that Mr. Arrance knew, at the time of such representations and acquiescence, that the 10-inch casing was the property of appellant, or, from his position, should have known thereof.

The parties agree: That appellee had leased the land and C. W. Whitehead drilled the well thereon substantially as stated in appellee's petition. The testimony shows that Mr. Arrance was the manager of appellant's branch house located at Vernon, Tex., and had authority to lease or sell any and all kinds of oil well supplies. That Mr. Bromley was the superintendent of the drilling of the well and the agent of Mr. Whitehead. That in order to finish the well, it became necessary to obtain approximately 2,500 feet of 6⅝-inch casing. That Whitehead was sick and unable to give his personal attention to the matter and had neither money nor credit with which he could obtain from appellant said casing. That Mr. Bromley explained the circumstances to appellee and advised him that the 6⅝-inch casing would cost $1.05 per foot and that it would require a cash payment of one-fourth of the value in order to get the casing, and sought and obtained from appellee $656.25, with which to pay appellant the one-fourth of the purchase price. That Mr. Bromley went to appellant's manager at Vernon, Mr. Arrance, and endeavored to secure the 6⅝-inch casing by paying the $656.25 cash and executing a contract for Mr. Whitehead to pay the balance of the rental and return the casing, if it was not finally purchased, and, if purchased, guarantee the balance of the purchase price. That Mr. Arrance declined to let Whitehead have the casing, not because Mr. Bromley was not authorized to bind Mr. Whitehead on the contract, but because Mr. Whitehead was already indebted to appellant in the sum of approximately $15,000 and was not considered good on the contract for the rental, the return of the casing, or the purchase price. That Mr. Bromley then asked Mr. Arrance if appellee could get the casing and was ad-

vised that he could. Mr. Bromley reported to appellee that he could not obtain the casing because of Mr. Whitehead's indebtedness to appellant and its refusal to accept Whitehead on the contract, and returned to appellee the $656.25. At that time Mr. Bromley told appellee that Whitehead owned the 8 and 10 inch casing in the well and requested appellee to get the 6⅝-inch casing from appellant, pay the $656.25, and sign the contract for the balance to accrue against the casing or the return thereof. He also agreed for Mr. Whitehead that appellee should have a pledgee's lien on the 8 and 10 inch casing for all moneys expended by him, by reason of the payment of the $656.25, and any additional obligations incurred by virtue of appellee's signing the contract, and in addition thereto a pledgee's lien on said 8 and 10 inch casing for $810.90, that Whitehead was already indebted to appellee, which was agreed upon. That appellee and Mr. Bromley then went to appellant's manager, Mr. Arrance, and were advised again that Whitehead was indebted to appellant in the sum of approximately $15,000, and it would extend him no further credit, but would let appellee have the 6⅝-inch casing by the payment of one-fourth of the purchase price, $656.25, and the execution of a contract for the rental thereafter to accrue, or the return of the casing in the event it was not finally purchased, and the balance of the purchase price when purchased. That, during this conference, Mr. Arrance was informed that appellee thought he would be safe in advancing the $656.25 and signing the contract, as Whitehead owned the 8 and 10 inch casing then in the well, which was worth enough to protect appellee on the expenditures for the 6⅝-inch casing and also on the other indebtedness owed by Whitehead to appellee, though the amount of the former indebtedness, $810.90, was not mentioned. Appellee explained that he was in possession of the 8 and 10 inch casing, and it was understood that he had a pledgee's lien thereon for his expenditures, for which reason he considered himself safe, and Mr. Arrance said: "You are perfectly safe. You have got possession of it, and it's on your place." He did not say anything about appellant owning or claiming any interest in the 8 and 10 inch casing, but acquiesced in the statement that Mr. Whitehead was the owner thereof and appellee's taking a lien thereon, but for which the appellee would not have paid the $656.25 and signed the contract for the 6⅝-inch casing. After this conference, the appellee paid over the money to Mr. Arrance and signed the contract, the casing was delivered, the well finished, and this casing pulled and returned to appellant at an expense to appellee of $198.10, making a total expended by him on the 6⅝-inch casing of $854.35. That appellant claimed the 10-inch casing under what is termed a lease contract, which had never

been recorded, and appellee had no notice, either actual or constructive, of appellant's claim, at the time of the transaction, by which the 6⅝-inch casing was secured; that after the well was completed, which was a nonproducer, Mr. Arrance wanted to pull the 10-inch casing, which appellee refused to allow, and reminded Mr. Arrance that he had a pledgee's lien thereon and nothing had been said about the claim of appellant to said casing at the time of the transaction by which the 6⅝-inch casing was obtained. Mr. Arrance said his boss claimed the 10-inch casing and he would have to look it up. That appellee filed a suit, cause No. 4287 in the district court of Wilbarger county, against C. W. Whitehead, for the same indebtedness described in his petition in this cause, recovered a judgment therefor and a foreclosure of his lien against the 10-inch casing at the August term of the district court, 1927. That Mr. Arrance understood that all Mr. Whitehead's casing was sent out on rental, as that was the only way Whitehead ever got any pipe from appellant.

The authority of Bromley to bind Whitehead in giving the lien to appellee was determined in the suit of Milner v. Whitehead, No. 4287, as the record discloses that Milner, the appellee here, obtained in said suit a judgment against Whitehead for the debt here described and a foreclosure of the same lien against the 10-inch casing.

[1] The testimony is sufficient to show that the appellee would not have paid the money expended by him for the 6⅝-inch casing and sign the contract therefor but for the acquiescence of Mr. Arrance, appellant's manager, in the statements that Whitehead was the owner of the 10-inch casing then in the well, and the statement of Mr. Arrance that appellee would be perfectly safe in making the deal, as the 10-inch casing was on appellee's place and in his possession. That Mr. Arrance was the manager of appellant's branch house at Vernon, Tex., where the 6⅝-inch casing was obtained, with authority as such manager to represent appellant, and was acting within the scope of his authority, is not controverted.

"The rule of estoppel between parties covers, of course, the misrepresentations of agents, even agents of corporations, when made in the scope of their employment. Where an agency really exists, the principal is estopped to deny the truth of the agent's statements, express or tacit, just as much as if he had himself made them, subject to the same limitations that would prevail in that case." Bigelow on Estoppel, p. 618.

[2] The evidence is uncontroverted that the appellant, at the time of the transaction by which the 6⅝-inch casing was obtained, knew of the contract between it and C. W. Whitehead relative to the 10-inch casing involved in this suit, but the contention is that Mr. Arrance, the manager of the branch house at

Vernon, did not have such information. However, as he was the agent of appellant and acting within the scope of his authority, his statements, "express or tacit," as effectually estop the appellant as if such statements and acquiescence had been made by the president of the company.

"There is no direct evidence that at the time referred to Smith had in his mind his title to the land, but we hold that knowledge of such title must be imputed to him, and that his failure to mention it when he actively advocated the loan and made statements as to O'Conner's title, shows either an abandonment of it or culpable negligence." Nichols-Steuart et al. v. Crosby et al., 87 Tex. 443, 29 S. W. 380.

See, also, First National Bank v. Hamilton National Bank, 17 Tex. Civ. App. 555, 43 S. W. 613; Chapman v. McLemore, 68 Tex. 654, 5 S. W. 682.

[3] It is a well-established doctrine that where one of two innocent parties must suffer, he who trusts most must suffer most. Neale v. Sears, 31 Tex. 116.

[4, 5] The appellant assigns as error the action of the court in foreclosing appellee's lien for the $810.80, the amount for work, gasoline, etc., because said amount was advanced and the credit therefor extended by appellee to Whitehead before appellee acquired his lien on the casing involved in this suit and prior to the acquiescence and representations of appellant's manager relied on as an estoppel against appellant.

The record shows affirmatively and without contradiction that the debt for the work done and for the gasoline and other items paid by appellee, aggregating the $810.80, was created before appellee acquired his lien and prior to the estoppel pleaded against appellant, and that appellee did not rely on what Mr. Arrance said, or on his acquiescence in what was said, in extending the credit to Whitehead for that sum, but that the same was a pre-existing debt and that appellee, as to that amount, was not damaged or injured by any acquiescence or representations of Mr. Arrance. One of the essential elements necessary to constitute an equitable estoppel by misrepresentation and acquiescence is that the party urging such estoppel must have acted to his prejudice, relying on such misrepresentation and acquiescence.

The appellee contends that appellant having delivered possession of the 10-inch casing to C. W. Whitehead under a contract, by the terms of which the title was reserved to secure the payment of a part of the purchase money, said contract should be construed to be a chattel mortgage, and appellant having failed to register such contract, as required by article 5489, R. C. S. 1925, and appellee having no notice, either actual or constructive, of appellant's claim, the pledgee's lien to secure said $810.80 to appellee was superior to appellant's rights.

[6] We do not deem it necessary to decide whether or not the contract between appellant and Whitehead is a chattel mortgage, for if we concede that it is a mortgage, said $810.80 was a debt created before appellee acquired his lien, and did not, as to appellant, constitute a valid consideration and make appellee a lienholder in good faith, because it was an antecedent debt.

"Whether or not a junior mortgagee is to be properly so classed, under the law regulating registration of instruments affecting titles to lands (Revised Statutes, art. 4640) for any purpose, is a question which admits of doubt under the decisions. In the case of McKeen v. Sultenfuss, 61 Tex. 325, the question was whether or not the holder of a junior mortgage given to secure an antecedent debt, who could not, therefore, be protected as a purchaser, was to be regarded as a lien creditor and to be protected as such, although he had parted with no consideration on faith of the security, and it was held that he was. In the subsequent case of Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248, it was held that the term 'creditor' as used in the chattel mortgage statute, means only such creditors as have acquired liens by proceedings at law, and that mortgagees and other lienholders by contract or act of the parties are on a different footing and must show some consideration other than an antecedent debt, in order to postpone the prior unrecorded deed. This was so modified in Berkey & Gay Furniture Co. v. Sherman Hotel Co., 81 Tex. 141, 16 S. W. 807, as to include within the statute, as creditors, landlords whose liens arise by operation of law. The holding in Overstreet v. Manning was based upon a statute which made unregistered chattel mortgages void as against creditors, and also as against 'subsequent purchasers and mortgagees or lienholders in good faith,' thus expressly classifying mortgagees with purchasers and distinguishing them from creditors; and it might be said that this decision does not impair the force of that in McKeen v. Sultenfuss, which construed the statute concerning registration of instruments affecting the titles to land, in which the protected classes are mentioned merely as 'creditors and subsequent purchasers for valuable consideration without notice.' But the question suggests itself, does not the term 'purchasers' include mortgagees, and does not the statute so classify them?

"In a later case a like question arose under the Act of 1885 (article 3327, Rev. St.), concerning reservations of title in the sale and delivery of chattels, such as had before been known as 'conditional sales,' and converting them into chattel mortgages, and making them, unless registered, void 'as to creditors and bona fide purchasers.' It was held that such instruments, although unregistered, created valid liens as between the parties, and that subsequent mortgagees were not lien creditors, within the sense of the statute, but were to be classed as purchasers, and, in order to postpone the prior lien to their mortgage, antecedent debts, to secure which the mortgage had been given, were not a sufficient consideration. Bowen v. Wagon Works, 91 Tex. 385, 43 S. W. 872." William Baker Turner et al. v. M. A. Cochran, 94 Tex. 480, 61 S. W. 923.

"A lienholder in good faith is one who pays

a valuable consideration at the time of acquiring the lien and is without notice of the prior unregistered mortgage." Stewart & Alexander Lumber Co. v. Miller & Vidor Lumber Co. (Tex. Civ. App.) 144 S. W. 343.

The record discloses without controversy that the $810.80 was for a debt created before appellee acquired his pledgee's lien and before any misrepresentation or acquiescence of appellant relied on by appellee, as creating an estoppel. Appellee's lien against Whitehead to secure said $810.80 was inferior to appellant's claim.

[7] Appellant challenges as erroneous special issue No. 3 submitted by the court, asking the jury, in effect, if the appellee was induced to sign the rental for the 6⅝-inch casing by the statements or acquiescence of Mr. D. C. Arrance, to the effect that appellee was safe in taking a lien on the 10-inch casing involved in this suit, because appellee had not pleaded that he was induced to sign 'the contract by reason of the acquiescence or representations alleged, but had paid the cash rental of $656.25, relying on such acquiescence and representations. This issue was duly excepted to because not in compliance with the pleadings, and in view of the testimony of appellee that he had agreed with Mr. Bromley to advance the $656.25, the cash payment on the 6⅝-inch casing, before any conversation with Mr. Arrance, and that he would have advanced said money without any representations from Mr. Arrance and would have put it up without any assurance that he would have a lien on the 10-inch casing, this assignment is sustained.

[8] Appellant also attacks the judgment for uncertainty, because it fails to determine the amount for which appellee's lien should be foreclosed against appellant on the 10-inch casing. Appellee did not sue appellant to recover a debt against it, but the suit is to determine the superiority of appellee's lien over appellant's claim, and to foreclose his lien for the amount due him by C. W. Whitehead against appellant on the casing and perpetually enjoin the appellant from interfering with said casing, taking possession of, or selling the same. The court, in his judgment in this case, orders the clerk to issue an order of sale to any sheriff or constable of Wilbarger county, directing that the casing be sold, and, if necessary, that it be pulled out of the well and the proceeds thereof be applied to the payment of the judgment in cause No. 4287, Milner v. Whitehead.

Neither the judgment in said case nor any data appears in this record from which it can be ascertained with certainty the amount of the judgment in cause No. 4287. The record discloses that the 10-inch casing, at the time of the trial in this case, was of the market value of approximately $2,475; that said casing was in the well on appellee's premises; that in said well there was also some 15-inch casing and some 12-inch casing, which was the property of appellant; that it was impracticable to pull the 15-inch and 12-inch casing without first pulling the 10-inch casing. Under the testimony revealed in this record, appellant is entitled, as against appellee, to the remainder of the proceeds derived from the sale of the 10-inch casing after appellee has received the money paid by him on the 6⅝-inch casing.

The judgment is reversed, and the cause remanded.